# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) No. 3:16-cr-661-01-JAW |
| | ) |
| CARLOS MALDONADO-VARGAS, | ) |
| | ) |
| Defendant. | ) |

## SENTENCING ORDER

Convicted of securities fraud and bank fraud, a defendant objects to a restitution order requiring immediate payment of actual losses sustained by individual investors. The Court concludes that it does not have the authority to order immediate payment under the securities fraud conviction, that it does have the authority to order immediate payment under the bank fraud convictions, and that it does have the authority to order restitution as a condition of supervised release for both the securities and bank fraud convictions.

## I. BACKGROUND

On October 20, 2016, a federal grand jury for the District of Puerto Rico issued a sixteen-count indictment against Carlos Maldonado-Vargas, alleging that he engaged in securities fraud in violation of 15 U.S.C. § 78j(b) and 78ff(a) and bank fraud in violation of 18 U.S.C. § 1344. *Indictment* (ECF No. 1). On December 10, 2019, at the end of an eight-day trial, a federal jury convicted Mr. Maldonado-Vargas of all sixteen counts. *Jury Verdict* (ECF No. 117).[1] The jury also imposed a forfeiture

---

[1]   On July 20, 2021, then Chief Judge Gustavo Gelpi reassigned this case to this Judge. *Order* (ECF No. 160).

of $2,900,000. *Presentence Investigation Report* ¶ 2 (ECF No. 156) (*PSR*). On July 15, 2021, the United States Probation Office (PO) prepared a revised Presentence Investigation Report (PSR) and recommended that the Court impose a restitution order, pursuant to 18 U.S.C. § 3663A, requiring Mr. Maldonado-Vargas to repay forty-four victims a total of $2,180,234.20. *PSR* ¶ 145.

On July 27, 2021, the Court held a videoconference of counsel. *Min. Entry* (ECF No. 163). Counsel alerted the Court to legal issue as to whether the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, is applicable to this case and the Court ordered the parties to file memoranda. *Id.* On August 12, 2021, Mr. Maldonado-Vargas filed his memorandum. *Mem. in Support of [the Def.]* (ECF No. 167) (*Def.'s Mem.*). On August 24, 2021, the Government filed its response. *United States' Resp. in Opp'n to Def.'s Mem. (ECF No. 167)* (ECF No. 168) (*Gov't's Opp'n*). On December 15, 2021, a trial transcript was filed. *Tr. of Jury Trial* (ECF No. 175).[2]

## II.   THE CRIMES[3]

Carlos Maldonado-Vargas was the principal and owner of Business Planning Resources International Corporation (BPRIC), a corporation organized under the

---

[2] Throughout his defense of this indictment, Mr. Maldonado-Vargas has maintained that the Government could not proceed with the bank fraud counts on the ground that none of the banks, in his view, had been defrauded. On August 14, 2019, Mr. Maldonado-Vargas filed a motion to dismiss the bank fraud counts of the indictment on this basis. *Mot. to Dismiss* (ECF No. 43). On September 4, 2019, former District Judge Gustavo Gelpi denied Mr. Maldonado-Vargas' motion to dismiss. *Order* (ECF No. 55). Following the jury verdict, on June 11, 2021, Mr. Maldonado-Vargas renewed his motion to dismiss the bank fraud counts. *Objs. to PSR* at 12-17 (ECF No. 145). On July 2, 2021, Judge Gelpi denied the renewed motion to dismiss. *Order re: Def.'s Objs. to Am. PSR (Docket No. 145)* at 1 (ECF No. 150). Although Mr. Maldonado-Vargas asks this Judge to revisit Judge Gelpi's orders on his motions to dismiss, the Court declines to do so.

[3] In its recitation of Mr. Maldonado-Vargas' crimes, the Court relied on the contents of the PSR. Mr. Maldonado-Vargas was convicted of these crimes by a jury and he does not accept his own guilt. *Sentencing Mem.* at 1, n.2 (ECF No. 151) ("Nothing in this memorandum should be interpreted as an acceptance of guilt").

laws of the commonwealth of Puerto Rico and the state of Florida.  *PSR* ¶¶ 6, 11.  Beginning as early as 2007, Carlos Maldonado-Vargas began soliciting and receiving money from investors, which he promised to invest on their behalf.  *PSR* ¶¶ 12-13.  The invested funds were transferred into the BPRIC bank account.  *PSR* ¶ 22.  Mr. Maldonado-Vargas, however, did not invest these funds as promised and instead diverted them for his own personal use, and when his original investors sought returns, he paid them not with the returns from investments but with new money from new investors.  *PSR* ¶ 13.  Mr. Maldonado-Vargas, thus, perpetrated a classic Ponzi Scheme, where funds from new investors are used to pay previous investors in the absence of any legitimate investments.  *PSR* ¶¶ 13, 18, 25.

To carry out his Ponzi Scheme, Mr. Maldonado-Vargas used a bank account at Banco Popular de Puerto Rico as the repository of investments that BPRIC received from investors.  *PSR* ¶ 23, 25.  Mr. Maldonado-Vargas was the only authorized user of the BPRIC bank account at Banco Popular de Puerto Rico, an account he controlled and used.  *PSR* ¶¶ 23-24.  The investments that Mr. Maldonado-Vargas and his promoters solicited were paid to the Banco Popular de Puerto Rico bank account through financial institutions whose deposits were insured by the Federal Deposit Insurance Corporation, including Banco Popular de Puerto Rico, First Bank, BBVA, PNC Bank, Scotiabank, Doral Bank, USAA Federal Savings Bank, Western Bank, and Banco Santander.  *PSR* ¶ 22.  From May 7, 2007 to December 23, 2010, ten investors sent investment funds totaling $561,133.21 through their financial institutions to the BPRIC bank account at Banco Popular de Puerto Rico.  *PSR* ¶ 25.

Banco Popular de Puerto Rico and the other financial institutions were defrauded by the transfer or loss of monies under their custody and control under Mr. Maldonado-Vargas' false and fraudulent representations. *PSR* ¶ 26.

Mr. Maldonado-Vargas used promoters to solicit so-called Investment Contracts for individual investors to invest their money with BPRIC. *PSR* ¶ 15. Each promoter received a commission for each Investment Contract that the promoter caused to be signed with BPRIC. *Id.* The Investment Contracts promised investors rates of return from 15% to 100% and guaranteed the principle amount of the investment if the client did not make the maximum productive development. *PSR* ¶ 17. From February 1, 2011 through December 16, 2011, ten investors signed Investment Contracts and invested a total of $482,000 in BPRIC. *PSR* ¶ 19.

Mr. Maldonado-Vargas represented that the investment proceeds would be invested in various companies, including Pet Card Systems, Inc., Glorimar Fashions and Tailoring, LLC, Global Business Insurance Agency, Inc., and the Datavos Corporation. *PSR* ¶ 16. Mr. Maldonado-Vargas failed to disclose, however, that the investment funds would be used to buy and trade stocks and commodities on a Scottrade account, with Forex Capital Markets, LLC, and other personal trading accounts. *Id.* Mr. Maldonado-Vargas also failed to disclose that he would divert these investment funds for his personal use, including for personal travel and expenses, rent, entertainment, and automobile loan payments. *PSR* ¶¶ 13, 16.

Upon receiving these investment funds, to promote the investments and lull investors into a false sense of security that their investments were safe and

performing as promised, Mr. Maldonado-Vargas distributed lulling payments to investors. *PSR* ¶ 18. These payments were not actual returns on investment but instead were diverted from new money invested by new investors. *Id.*

In 2012 and continuing until 2016, as Mr. Maldonado-Vargas and BPRIC failed to provide the principle investment and promised returns to his investors, Mr. Maldonado-Vargas communicated with investors through telephone and email, using his Gmail, Yahoo!, and Hispano Grupo accounts. *PSR* ¶ 20. In these mass and personalized emails, Mr. Maldonado-Vargas attempted to deter investors from taking legal action and promised the return of money from such investments as Chinese bonds, machinery belonging to a recycling company, and a gold mine in Brazil. *PSR* ¶ 21.

The PO states that according to the Government's complete financial analysis of this offense, during the life of this scheme, Mr. Maldonado-Vargas extracted more than $6,000,000 from investors for fraudulent investments. *PSR* ¶ 35.

### III. CHARGES, CONVICTIONS and RESTITUTION

A federal grand jury issued a sixteen-count indictment against Mr. Maldonado-Vargas. *Indictment* at 1-13. Count One alleged securities fraud, a violation of 15 U.S.C. §§ 78j(b) and 78ff(a). The securities fraud allegation was based on Mr. Maldonado-Vargas' solicitation of individuals to invest in so-called Investment Contracts, which the grand jury alleged were fraudulent and deceitful. *Id.* at 1-7. The indictment claimed that the Investment Contracts were securities within the meaning of 15 U.S.C. § 78c(a)(10). *Id.* at 2.

Counts Two through Sixteen each alleged bank fraud, violations of 18 U.S.C. § 1344. *Id.* at 7-13. For example, Count Two alleged that on February 28, 2010, A.R.Z. and L.A.M. invested $20,000 in BPRIC through First Bank and their check was deposited in BPRIC's bank account at Banco Popular de Puerto Rico. *Id.* at 9. Also, as noted earlier, on December 10, 2019, a federal jury convicted Mr. Maldonado-Vargas on each count. *Jury Verdict* at 1-13.

In the PSR, the PO concluded that the provisions of the Mandatory Victim Restitution Act of 1996 (MVRA) apply to Mr. Maldonado-Vargas' title 18 offense. *PSR* ¶ 37. As of the date of disclosure of the PSR, the PO listed 44 victims to whom Mr. Maldonado-Vargas owed restitution with a total restitution figure of $2,180,234.20. *PSR* ¶ 145.

## IV.   THE POSITIONS OF THE PARTIES

### A.   Carlos Maldonado-Vargas' Position

In his memorandum, Mr. Maldonado-Vargas argues that the provisions of the MVRA are applicable only to title 18 offenses and that restitution under title 15 is not allowed under the MVRA. *Def.'s Mem.* at 4-6. Absent statutory authority for imposing an order of restitution, Mr. Maldonado-Vargas maintains that the Court should not order restitution as a part of its sentencing. *Id.* at 9 ("The M[V]RA does not apply, and no restitution should be imposed"). Finally, Mr. Maldonado-Vargas asserts that if the Court orders restitution, it should be limited to only those individuals listed in the indictment and who testified at trial. *Id.* at 8-10.

### B.   The Government's Position

In its opposition, the Government concedes that the First Circuit has not yet directly addressed whether the MVRA covers securities fraud. *Gov't's Opp'n* at 5. However, the Government says that the Court need not reach this issue because "restitution is still appropriate for *all* of the victims of Defendant's fraudulent scheme under the MVRA." *Id.* (emphasis in original). Citing First Circuit caselaw, the Government contends that the statutory definition of "victim" under the MVRA is broad enough to encompass the individual investors, including those not named in the indictment, as victims of the bank fraud counts under title 18. *Id.* at 6-8. As an alternative, the Government maintains that the Court should order restitution to all identified victims as a condition of probation or supervised release. *Id.* at 8-9. The Government submits that "imposing restitution as a condition of supervised release should be a last resort because it limits the United States' efforts to collect, and it reduces the probability that victims will receive restitution." *Id.* at 9.

## V. DISCUSSION

### A. The MVRA and Securities Fraud

Citing Second, Fifth, Seventh, Eighth, and Ninth Circuit caselaw, Mr. Maldonado-Vargas argues that the MVRA, which is found in title 18, does not apply to offenses under title 15, including securities fraud charged in Count One pursuant to 15 U.S.C. §§ 78(j) and 78(ff)(a) of which he was convicted. *Def.'s Mem.* at 4-6. Although there is no First Circuit law directly on point, the Court agrees with the growing body of caselaw that restricts restitution under 18 U.S.C. §§ 3663 and 3663A to violations of the laws enumerated in those provisions.

To explain, "the law in this circuit remains that restitution ordered as part of a criminal sentence is a criminal penalty." *United States v. Harvey*, __F.4th__, 2021 U.S. App. LEXIS 36314, at *11 (1st Cir. Dec. 9, 2021) (quoting *United States v. Aguirre-González*, 597 F.3d 46, 52 (1st Cir. 2010)). In general "[a] federal court cannot order restitution 'except when authorized by statute.'" *United States v. Westbrooks*, 858 F.3d 317, 327 (5th Cir. 2017) (quoting *United States v. Love*, 431 F.3d 477, 479 (5th Cir. 2005)); *accord Harvey*, 2021 U.S. App. LEXIS 36314, at *11-12 (concluding there was no statutory authority for a district court to modify a restitution order). Section 3663(a) provides that "a district court generally may order restitution as part of a sentence itself when the defendant is convicted of a specified collection of statutes." *United States v. Bok*, 156 F.3d 157, 166 (2nd Cir. 1998). The statutes listed in §§ 3663 and 3663A do not encompass violations of title 15, including securities fraud. *See* 18 U.S.C. §§ 3663(a)(1)(A), 3663A(c)(1)(A).

The circuit courts that have addressed this issue concur that restitution may not be ordered to be paid immediately for a violation of a criminal statute not enumerated in §§ 3663 and 3663A. *United States v. Acord*, 790 F. App'x 18, 19 (5th Cir. 2020) (holding that neither the MVRA nor the VWPA applies to convictions under title 15); *United States v. Adams*, 955 F.3d 238, 250-51 (2d Cir. 2020) (holding that neither the MVRA nor the VWPA applies to convictions under title 26); *United States v. Bolton*, 908 F.3d 75, 97-98 (5th Cir. 2018) (modifying a restitution order to begin upon defendant's supervised release term where the district court lacked statutory authorization to order that restitution was due "immediately"); *United States v.*

*Yielding*, 657 F.3d 688, 718-19 (8th Cir. 2011) (finding that the MVRA does not apply to an aiding and abetting conviction under title 42); *United States v. Elias*, 269 F.3d 1003, 1021 (9th Cir. 2001) (finding that the VWPA does not apply to aiding and abetting convictions); *United States v. Fore*, 169 F.3d 104, 110 (2d Cir. 1999) (holding that the MVRA does not apply to a conviction under title 42); *Bok*, 156 F.3d at 166-67.

Even though the Court agrees with Mr. Maldonado-Vargas as to the inapplicability of 18 U.S.C. §§ 3663 and 3663A to his securities fraud conviction under title 15, this victory takes him only so far, because he was also convicted of fifteen counts of bank fraud, each of which is a title 18 violation.

### B. The MVRA and Bank Fraud

Unlike securities fraud, the bank fraud statute of which Mr. Maldonado-Vargas was convicted under Counts Two through Sixteen is found in title 18. *See* 18 U.S.C. § 1344. By its terms, § 3663A applies to "all sentencing proceedings for convictions of . . . any offense that is . . . an offense against property under this title." As bank fraud is an offense against property, the restitution provision of § 3663A appears by its language to apply to Mr. Maldonado-Vargas' bank fraud convictions.

Mr. Maldonado-Vargas' argument against restitution under § 3663A is that the victims listed in the PSR are not bank fraud victims as defined under the statute. *Def.'s Mem.* at 8-9. He notes that the convictions are for bank fraud and that none of the restitution victims is a bank. *Id.* Therefore, he reasons, the investor victims of Mr. Maldonado-Vargas' bank fraud do not fit within the definition of victim under the

MVRA or, put differently, "[t]here exists no other evidence [apart from evidence that nine banks were defrauded through fifteen bank deposits] to uphold that all of the alleged victims in paragraph 147 of the amended PSR were part of the bank fraud." *Id.* at 8. From Mr. Maldonado-Vargas' viewpoint, only five victims should be included in the restitution order because they were the only victims included in Counts Two through Sixteen who also testified at trial, and who are mentioned in paragraph 147 of the PSR. *Id.* at 8-9.

As originally enacted in 1982, the MVRA provided that "a defendant convicted of an offense" may be ordered to "make restitution to any victim of such offense." 18 U.S.C. § 3579(a)(1) (1982 ed., Supp. IV). In 1990, interpreting the scope of that language, the United States Supreme Court limited the applicability of the restitution provision to only the named victim, not to victims of the defendant's broader criminal scheme. *Hughey v. United States*, 495 U.S. 411, 422 (1990). In response to this constrictive interpretation, Congress amended § 3663A's definition of victim:

> For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2); *see United States v. Brown*, 665 F.3d 1239, 1252 (11th Cir. 2011) ("[Section] 3663's current definition of victim is a result of Congress's reaction to the Supreme Court's narrow interpretation of the statute's original language in *Hughey* . . . .").

10

Applying this expanded statutory definition of victim to Mr. Maldonado-Vargas' bank frauds, the Court concludes that an individual who sustained a loss directly from his scheme to defraud the banks is a "person directly harmed by the defendant's criminal conduct in the course of the scheme . . . ." 18 U.S.C. § 3663A(a)(2). The closest analogous case in the First Circuit is *United States v. Alphas*, 785 F.3d 775 (1st Cir. 2015). In *Alphas*, the defendant was convicted of wire fraud, a violation of 18 U.S.C. § 1343, for engaging in a scheme to defraud insurance companies. 785 F.3d at 777-79. The defendant appealed an order of restitution pursuant to § 3663A, requiring payment to the insurers. *Id.* at 786. The First Circuit reiterated that to make an award of restitution under the MVRA, a court must be satisfied that the "losses . . . have an adequate causal link to the defendant's criminal conduct." *Id.* As the *Alphas* Court explained, the standard is whether the government has established "a but-for connection between the defendant's fraud and the victim's loss." *Id.* Thus, "[a]ctual loss is widely (and correctly) thought to be limited to pecuniary harm that would not have occurred but for the defendant's criminal activity." *Id.*

Applying this "but-for" standard to the victims in Mr. Maldonado-Vargas' case, the Court readily concludes that they fit within the definition of victim under 18 U.S.C. § 3663A(a)(2). "Victim" can be extended to those harmed by Mr. Maldonado-Vargas's entire scheme, of which bank fraud was an inextricable component. Based on the contents of the PSR, the Government established that Mr. Maldonado-Vargas devised his Ponzi Scheme using banks as a conduit to victimize unwary investors who

placed their trust and money in his care. The PSR demonstrates to this Court's satisfaction that none of the listed victims would have suffered their losses but for Mr. Maldonado-Vargas' criminality. Thus, they fit well within the § 3663A(a)(2) definition of victim.

Mr. Maldonado-Vargas has another arrow in his quiver. From Mr. Maldonado-Vargas' viewpoint, if the Court concludes that the individual investors are entitled to restitution, only five victims should be included in the restitution order because they were the only victims included in the bank fraud Counts Two through Sixteen, who also testified at trial, and who are mentioned in paragraph 147 of the PSR. *Def.'s Mem.* at 8-9. Thus, he objects to a restitution order for victims other than those five individuals and their losses as listed in the indictment that were the subject of trial evidence. *Id.* at 8.

On this point, Mr. Maldonado-Vargas' position is contrary to settled First Circuit law. In *United States v. Hensley*, 91 F.3d 274 (1st Cir. 1996), the First Circuit ruled that so long as a defendant's "scheme, conspiracy, or pattern of criminal activity" directly harmed a victim, a court could impose a restitution order even if the "*particular criminal conduct* of the defendant" which directly harmed the victim was not "charged in the indictment." *Id.* at 277 (emphasis in original). Here, the indictment charged that Mr. Maldonado-Vargas engaged in a "scheme and artifice to defraud" in the securities fraud alleged in Count One and a "scheme to defraud" in the bank fraud alleged in the remaining counts. *Indictment* at 3, 9; *see United States v. Acosta*, 303 F.3d 78, 87-88 (1st Cir. 2002) ("Under 18 U.S.C. § 3663(a)(2), any

conduct that is in the course of the scheme, conspiracy, or pattern may be considered in calculating restitution"). The MVRA authorizes a court to award restitution "for losses that have an adequate causal link to the defendant's criminal conduct." *Alphas*, 785 F.3d at 786.

Furthermore, to the extent that Mr. Maldonado-Vargas is claiming that a court may consider only victims charged in the indictment and proven at trial, his position cuts against the role of the PO in performing presentence investigations, identifying victims, and recommending restitution amounts. Mr. Maldonado-Vargas cites no authority for the proposition that a sentencing court may not consider the results of the PO's presentencing investigation in making restitution determinations and the Court is aware of none. To the contrary, the PO is authorized by statute and rule to conduct presentence investigations. *See* 18 U.S.C. § 3552(a); FED. R. CRIM. P. 32(c). In fact, Rule 32(c)(1)(B) requires the PO, if authorized by statute, to investigate restitution:

> If the law permits restitution, the probation officer must conduct an investigation and submit a report that contains sufficient information for the court to order restitution.

FED. R. CRIM. P. 32(c)(1)(B). The Court rejects Mr. Maldonado-Vargas' unsupported attempt to limit the victims potentially subject to a restitution order as contrary to federal statute, the Federal Rules of Criminal Procedure, and First Circuit law.

    **C.**    **Restitution as a Condition of Supervised Release**

In this case, restitution is not only a question of whether, it is also a question of when. Even if (contrary to its determination here) this Court does not have the

13

authority to impose a restitution order pursuant to 18 U.S.C. § 3663A, which would compel the defendant to commence payment immediately, a district court does have the authority to impose restitution as a condition of supervised release upon release from incarceration under 18 U.S.C. § 3583(d). *Bok*, 156 F.3d at 166-67 (noting the district court's authority to order restitution as a condition of supervised release "without reference to the limitations in § 3663(a)"); *Adams*, 955 F.3d at 250 (same). Section 3583(d)(3) authorizes courts to impose, as a condition of supervised release, "any condition set forth as a discretionary condition of probation in § 3563(b)." One such condition is the requirement that the defendant "make restitution to a victim of the offense." 18 U.S.C. § 3563(b)(2). Moreover, the United States Sentencing Guidelines provide that "[i]n the case of an identifiable victim, the court shall . . . impose a term of probation or supervised release with a condition requiring restitution for the full amount of the victim's loss, if the offense is not an offense for which restitution is authorized under 18 U.S.C. § 3663(a)(1) but otherwise meets the criteria for an order of restitution under that section." U.S.S.G. § 5E1.1(a)(2).

## VI. CONCLUSION

The Court concludes that the individual investors who lost their investments as a result of Carlos Maldonado-Vargas' Ponzi Scheme for which he stands convicted are entitled to restitution for their direct actual losses under 18 U.S.C. § 3663A.

SO ORDERED.

                                    <u>/s/ John A. Woodcock, Jr.</u>
                                    JOHN A. WOODCOCK, JR.
                                    UNITED STATES DISTRICT JUDGE

Dated this 21st day of December, 2021