**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) No. 3:16-cr-661-01-JAW |
| | ) |
| CARLOS MALDONADO-VARGAS | ) |

**ORDER DENYING MOTION FOR RELEASE PENDING APPEAL**

The court denies appellant's motion for bail pending appeal for two reasons. First, defendant has failed to establish by clear and convincing evidence that he does not represent a danger to the community. Second, he has failed to demonstrate that he is raising a substantial question on count one, securities fraud, and that if he were successful on counts two through sixteen, the bank fraud counts, the resulting sentence would be less than the time he has already served plus the time likely served during his appeal.

**I.   BACKGROUND**

   **A.   Procedural History**

On October 20, 2016, a federal grand jury for the District of Puerto Rico issued a sixteen-count indictment against Carlos Maldonado-Vargas, alleging that he engaged in securities fraud in violation of 15 U.S.C. § 78j(b) and 78ff(a) and bank fraud in violation of 18 U.S.C. § 1344(2). *Indictment* (ECF No. 1). On December 10, 2019, at the end of an eight-day trial, a federal jury convicted Mr. Maldonado of all sixteen counts. *Jury Verdict* (ECF No. 117).[1] On July 15, 2021, the United States

---

[1]   At the sentencing hearing, the Court discussed the status of the Government's request for a forfeiture of $2,900,000. *Sentencing Hr'g* 6:16-11:11, 69:4-77:21 (ECF No. 204) (*Sentencing Tr.*). There

Probation Office completed a comprehensive, revised Presentence Investigation Report (PSR).[2] *Presentence Investigation Report* (*PSR*).

On September 22, 2022, the Court held a sentencing hearing at the United States District Court for Puerto Rico, *Sentencing Tr.* at 1-113, and imposed sentence. The Court ordered Mr. Maldonado incarcerated for 135 months on all counts, placed him on supervised release for three years on Count One and for five years on Counts Two through Sixteen, imposed a total special assessment of $1,600, and ordered restitution in the total amount of $1,986,734.26. *J.* (ECF No. 193); *Am. J.* (ECF No. 205). It imposed no fine. *Id.*

On September 21, 2022, Mr. Maldonado filed a notice of appeal to the Court of Appeals for the First Circuit. *Notice of Appeal* (ECF No. 195). On July 28, 2023, Mr. Maldonado filed a motion for release pending appeal. *Mot. for Bail Pending Appeal* (ECF No. 206) (*Def.'s Mot.*). On August 16, 2023, the Government filed its opposition. *United States' Resp. to Def.'s Mot. for Bail Pending Appeal* (ECF No. 208) (*Gov't's Opp'n*).

---

was confusion as to whether a jury had made the forfeiture finding. *PSR* ¶ 2. It had not. Under *United States v. Candelaria Silver*, 166 F.3d 19 (1st Cir. 1999), a jury must determine the amount of a forfeiture. *Id.* at 43; *see United States v. Hurley*, 63 F.3d 1, 23 (1st Cir. 1995) ("The initial forfeiture is sought in the indictment and, absent a waiver of jury trial, is specified in the jury verdict."). Following the sentencing hearing, on September 16, 2022, the Court denied the Government's request for a money judgment, concluding that by failing to comply with FEDERAL RULE OF CRIMINAL PROCEDURE 32.2, the Government had waived its right to claim a money judgment. *Order Denying the Gov't's Mot. for Money J.* (ECF No. 191). The forfeiture and money judgment issues are not before the Court in the pending motion.

[2]  On July 20, 2021, then Chief Judge Gustavo Gelpi reassigned this case to this Judge. *Order* (ECF No. 160).

B.  **The Crimes**

Carlos Maldonado was the principal and owner of Business Planning Resources International Corporation (BPRIC), a corporation organized under the laws of the commonwealth of Puerto Rico and the state of Florida. *PSR* ¶¶ 6, 13. As early as 2007, Mr. Maldonado began soliciting and receiving money transfers from investors into the BPRIC bank account, which he promised to invest on their behalf. *PSR* ¶¶ 12-13. Mr. Maldonado, however, did not invest these funds as promised and instead diverted them for his own personal use, and when his original investors sought returns, he paid them not with returns from investments but with new money from new investors. *PSR* ¶ 13. Mr. Maldonado, thus, perpetrated a classic "Ponzi scheme," where funds from new investors are used to pay previous investors in the absence of any legitimate investments. *PSR* ¶¶ 13, 18, 25.

To carry out his Ponzi scheme, Mr. Maldonado used a bank account at Banco Popular de Puerto Rico, of which he was the only authorized user, as the repository of investments BPRIC received. *PSR* ¶ 23-25. The investments that Mr. Maldonado and his promoters solicited were paid to the Banco Popular de Puerto Rico bank account through financial institutions whose deposits were insured by the Federal Deposit Insurance Corporation, including Banco Popular de Puerto Rico, First Bank, BBVA, PNC Bank, Scotiabank, Doral Bank USAA Federal Savings Bank, Western Bank, and Banco Santander. *PSR* ¶ 22. Between May 7, 2007 and December 23, 2010, ten investors sent funds totaling $561,133.21 through their financial institutions to the BPRIC bank account at Banco Popular de Puerto Rico. *PSR* ¶ 25.

Mr. Maldonado's false and fraudulent representations defrauded Banco Popular de Puerto Rico and the other financial institutions through the loss or transfer of monies under their custody and control. *PSR* ¶ 26.

Mr. Maldonado used promoters to solicit so-called Investment Contracts for individual investors to invest their money with BPRIC. *PSR* ¶ 15. Each promoter received a commission for each BPRIC Investment Contract that the promoter induced. *Id.* The Investment Contracts promised investors returns from 15% to 100% and guaranteed the principal amount of the investment if the client did not make the maximum productive development. *PSR* ¶ 17. From February 23, 2011 through December 16, 2011, ten investors signed Investment Contracts and invested a total of $482,000 in BPRIC. *PSR* ¶ 19.

Mr. Maldonado represented that the investment proceeds would be invested in various companies, including Pet Card Systems, Inc., Glorimar Fashions and Tailoring, LLC, Global Business Insurance Agency, Inc., and Datavos Corporation. *PSR* ¶ 16. Mr. Maldonado failed to disclose that the investment funds would be used to buy and trade stocks and commodities on a Scottrade account, other personal trading accounts, and with Forex Capital Markets, LLC. *Id.* Mr. Maldonado also failed to disclose that he would divert these investment funds for his personal use, including for personal travel, rent, entertainment, and automobile loan payments. *PSR* ¶¶ 13, 16.

Upon receiving these investment funds, to promote the investments and give investors a false sense of security that their investments were safe and performing

as promised, Mr. Maldonado distributed lulling payments to investors. *PSR* ¶ 18. These payments were not actual returns on investment but instead were diverted from new investors' funds. *Id.*

In 2012 and continuing until 2016, as Mr. Maldonado and BPRIC provided neither the promised returns nor their principal investment to investors, Mr. Maldonado communicated with investors through telephone and mass emails, using his Gmail, Yahoo!, and Hispano Grupo accounts. *PSR* ¶ 20. In these mass and personalized emails, Mr. Maldonado attempted to deter investors from taking legal action and promised to return money through investments in Chinese bonds, a Brazilian gold mine, or recycling company machinery. *PSR* ¶ 21. During the life of this scheme, Mr. Maldonado extracted more than $6,000,000 from investors for fraudulent investments. *PSR* ¶ 35.

## II.   THE PARTIES' POSITIONS

### A.   Carlos Maldonado's Motion

Contending that he represents "no flight risk," that he is not a "threat to society," and that his appeal is not "for the purpose of delay, but rather raises substantial questions of law that, if resolved in his favor, will likely result in the reversal of his convictions or an order for new trial," Mr. Maldonado moves for immediate release pending his appeal. *Def.'s Mot.* at 1.

### B.   The Government's Opposition

The Government opposes Mr. Maldonado's motion. *Gov't's Opp'n* at 1. The Government summarizes Mr. Maldonado's Ponzi scheme, noting that he "defrauded

roughly two hundred individuals" and brought in "over $5,000,000 by falsely promising returns and representing growth when none of the businesses in which he was supposed to invest the victim[s'] funds was generating any profits." *Id.* at 2. The Government reviews what transpired at Mr. Maldonado's sentencing hearing and stresses his shaky proposal to create a new business, Dryver, to rival Uber and Lyft. *Id.* at 9-14. The Government urges the Court to deny the motion based on Mr. Maldonado's "undercooked business ideas" and the predatory nature of his crimes against vulnerable victims. *Id.* at 13-14. The Government also disputes whether Mr. Maldonado has raised a substantial question of law on appeal. *Id.* at 15-24.

### III. LEGAL STANDARDS

Section 3143(b) provides:

**(b) Release or detention pending appeal by the defendant.**

**(1)** Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—

> **(A)** by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title [18 U.S.C. § 3142(b) or (c)]; and
>
> **(B)** that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
>> **(i)** reversal,
>> **(ii)** an order for a new trial,
>> **(iii)** a sentence that does not include a term of imprisonment, or
>> **(iv)** a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

> If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title [18 U.S.C. § 3142(b) or (c)] except that in the circumstance described in subparagraph (b)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.

18 U.S.C. § 3143(b).[3]

As § 3143(b)(1)(A) states, the burden to prove that he is not likely to flee or pose a danger to the safety of any other person rests with the defendant and must be shown by "clear and convincing evidence." *United States v. Bayko*, 774 F.2d 516, 520 (1st Cir. 1985). The First Circuit has observed that § 3143 "provides that, as a general rule, a person convicted of an offense and sentenced to a term of imprisonment shall be detained pending appeal." *United States v. Zimmy*, 857 F.3d 97, 99 (1st Cir. 2017).

The First Circuit also explained the meaning of the term, "substantial question," as it appears in § 3143(b)(1)(B): a "substantial question" is one that "very well could be decided the other way" and, if so, would not be "harmless or unprejudicial." *Bayko*, 774 F.2d at 523. In other words, the legal or factual issues must be "close." *Id.*

IV.  **DISCUSSION**

   A.  **Danger**

Mr. Maldonado's motion stops hard at the first release criterion: his obligation to prove by clear and convincing evidence that he is not likely to pose a danger to the

---

[3] Subsection (b)(2) of section 3143(b) sets certain crimes for which a judge must order a convicted defendant detained, but Mr. Maldonado-Vargas' convictions do not fit within the categories of crimes for which detention is mandatory upon conviction pending appeal. *See* 18 U.S.C. § 3143(b)(2).

safety of any other person or the community if released.[4] There is no evidence in the record that Mr. Maldonado is violent, so the Court concludes that he does not pose a danger of physical harm to others or the community. Nevertheless, he does pose, in the Court's view, a danger to the financial well-being of others and the community if released. As the Presentence Investigation Report details, Mr. Maldonado perpetrated a Ponzi scheme for about five years, raising over five million dollars ($5,000,000) in Investment Contracts on behalf of BPRIC, from over one hundred (100) individuals, resulting in losses to investors exceeding three million and seven-hundred thousand dollars ($3,700,000)." *PSR* ¶¶ 6, 12, 13, 14. Many of Mr. Maldonado' victims were individuals who could ill afford to lose the money they entrusted to him. *Id.* ¶¶ 41-79. Indeed, at the sentencing hearing, the Court imposed a six-level enhancement under United States Sentencing Commission Guideline § 2B1.1(b)(2)(C) because his offenses resulted in "substantial financial hardship to twenty-five or more victims," along with a two-level enhancement under § 2B1.1(b)(10) because he used "sophisticated means" to perpetrate his crimes. *Id.* ¶¶ 86-87.

Moreover, having committed these financial crimes, Mr. Maldonado appeared at his sentencing hearing and tried to convince the Court that he had developed an app called Dryver that would successfully compete with Uber and Lyft. *Sentencing*

---

[4] In its memorandum, the Government asserts that Mr. Maldonado-Vegas fled Puerto Rico and moved to Florida in 2011 when "the Ponzi scheme started crumbling and investors started coming after him." *Gov't's Opp'n* at 5. Although Mr. Maldonado's 2011 move to Florida is noted in the PSR, *PSR* ¶ 119, there is no suggestion that he fled Puerto Rico to avoid detection. The Court has not considered the Government's flight argument because it is not substantiated by the record.

8

*Tr.* 48:12-51:16. The evidence of Mr. Maldonado' newest scheme at the sentencing hearing gave the Court "substantial pause" because it was so obviously "[harebrained]" and "very sketchy." *Id.* at 67:24-25; 99:8-12. Indeed, Mr. Maldonado had convinced Mr. Cuevas-Arocho, a man who lost roughly $200,000 due to Mr. Maldonado's Ponzi scheme, to invest another $20,000 in his Dryver pipedream. *Id.* 53:8-64:20; 58:20-25; 63:6-12. This unsettling circumstance strongly suggests that Mr. Maldonado picks his targets and is able to convince them to part with their money for dubious and fanciful get-rich schemes. Moreover, during the sentencing hearing, Mr. Maldonado made several misrepresentations, and the Court questions his fundamental honesty. *See Gov't's Opp'n* at 7-13.

Based on his convictions, the PSR, and the sentencing hearing, the Court remains concerned that if released, Mr. Maldonado will find another "Carlos Cuevas-Arocho" to defraud, and thus he represents an ongoing danger to the community.

    **B.**     **Substantial Question**

To meet the "substantial question" prong of § 3143(b)(1)(B), the Bail Reform Act requires the movant to demonstrate that the appeal "raises a substantial question of law or fact likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B).

Mr. Maldonado was indicted for one count of securities fraud, a violation of 15 U.S.C. § 78j(b) and § 78ff(a), and fifteen counts of bank fraud, violations of 18 U.S.C.

§ 1344(2).  *Indictment* (ECF No. 1).  He was convicted of all sixteen counts.  *Jury Verdict* (ECF No. 117).

### 1.  Count One:  Securities Fraud

Regarding the securities fraud count, as the Court reads Mr. Maldonado's motion, he asserts that the evidence on this count is insufficient to sustain the verdict.  *See Def.'s Mot.* at 12 ("[A]pplication of the [*S.E.C. v. W.J.*] *Howey* [*Co.*, 328 U.S. 293 (1946)] test is highly fact dependent").  The standard for review of a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Falcón-Nieves*, Nos. 20-2189, 20-2190, 2023 U.S. App. LEXIS 22229, at *6 (1st Cir. 2023) (quoting *United States v. Woodward*, 149 F.3d 46, 56 (1st Cir. 1998) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))) (emphasis in original).  Since Mr. Maldonado preserved this asserted error, the First Circuit's review is de novo.  *Falcon-Nieves*, 2023 U.S. App. LEXIS 22229, at *6 (citing *United States v. Millán-Machuca*, 991 F.3d 7, 17 (1st Cir. 2021)).

A higher, more exacting standard of review applies to his argument that his conduct was not willful.  First, in his motion for release, Mr. Maldonado argues for a definition of "willfulness" derived from the Second Circuit, not the First Circuit.  *See Def.'s Mot.* at 13 (citing *United States v. Cassese*, 428 F.3d 92, 98 (2d Cir. 2005); and *United States v. Dixon*, 536 F.2d 1388, 1395 (2d Cir. 1976)).  The trial judge here instructed the jury on the definition of "willfully":

10

> To act "willfully" means to act voluntarily and intelligently and with a specific intent that the underlying crime be committed; that is to say, with a bad purpose either to disobey or disregard the law, not to act by ignorance, accident, or mistake.

*Tr. of Further Jury Trial*, at 28:10-14 (ECF No. 180) (*Dec. 9, 2019 Tr.*). This instruction on "willfully" is a verbatim recitation of the definition in the Pattern Criminal Jury Instructions for the District Courts for the First Circuit, rendering it plainly appropriate. *See* HON. NANCY TORRESEN, PATTERN CRIM. JURY INSTRUCTIONS FOR THE DISTRICT CTS. OF THE FIRST CIRCUIT, § 2.17 (updated May 15, 2023) (citing *United States v. Monteiro*, 871 F.2d 204, 208-09 (1st Cir. 1989)).

Second, Mr. Maldonado did not preserve an objection to the trial court's instruction on the definition of "willfully." The Court held an extensive charge conference on December 2, 2019, during which there was no objection to the jury instruction on the definition of "willfully." *Tr. of Further Jury Trial*, at 113:15-141:14 (ECF No. 179) (*Dec. 2. 2019 Tr.*). After the Court instructed the jury, it offered counsel another opportunity to object to the instructions, and defense counsel listed several specific objections to be preserved, not including the definition of willfully. *Dec. 9, 2019 Tr.* at 53:6-54:1.

By failing to preserve alleged legal error, Mr. Maldonado must meet the "exacting plain error standard." *United States v. Morales-Cortijo*, 65 F.4th 30, 31 (1st Cir. 2023). To meet this "steep climb," Mr. Maldonado must show "(1) that an error occurred (2) which was clear and obvious and which not only (3) affected his . . . substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 33-34 (quoting *United States v. Alejandro-*

11

*Rosado*, 878 F.3d 435, 439 (1st Cir. 2017)) (citations omitted).  As the definition of willfully came verbatim from the pattern jury instructions, Mr. Maldonado indeed has a very steep hill to climb to demonstrate any error, much less plain error.  The Court concludes that Mr. Maldonado fails to climb this very steep hill and has not raised a "substantial question" on Count One, the securities fraud count.

This conclusion is meaningful because having failed to demonstrate a substantial question of law or fact that is likely to result in reversal, a new trial, or a sentence without a term of imprisonment, the law requires Mr. Maldonado to show that he has raised a substantial question of law or fact likely to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  *See United States v. McCabe*, No. 90-1483, 1991 U.S. App. LEXIS 20448, at *4 (1st Cir. May 8, 1991).  The PSR calculated Mr. Maldonado's guideline sentence range of 135 to 168 months based on his violations of Counts Two through Sixteen, not on Count One.  *PSR* ¶¶ 84-94, 133.  Mr. Maldonado has not addressed what his guideline sentence range would have been if he had been convicted of only securities fraud.  In turn, the Court has no basis to conclude that if the First Circuit vacated Counts Two through Sixteen and remanded the case for resentencing, that the new guideline range would be less than the amount of time already served plus the expected duration of the appeal process.  Thus, Mr. Maldonado has failed to sustain his burden for immediate release.

### 2. Counts Two through Sixteen: Bank Fraud

Mr. Maldonado's main argument for reversible error concerns his convictions for Counts Two through Sixteen of the indictment, the bank fraud counts. Mr. Maldonado has maintained through this legal proceeding that the Government's "theory of bank-fraud was improper and the counts should be dismissed because, *inter alia*, the government did not allege that any bank had been defrauded or that disbursements had been induced 'by means of' a misrepresentation that reached the bank as required by *Loughrin v. United States*, 573 U.S. 351, 357 (2014)." *Def.'s Mot.* at 3. Here, unlike Count One, Mr. Maldonado made plain his objection to these counts, both pretrial, *Mot. to Dismiss* (ECF No. 43); *Order Denying Mot. to Dismiss for Lack of Juris.* (ECF No. 55); *Mot. Req. Order* (ECF No. 60); *Order Granting Mot. Req. Order* (ECF No. 61), and during trial, *Dec. 2. 2019 Tr.* at 93:24-100:2. The Court ruled against Mr. Maldonado but noted his argument had been "well-presented" and was "preserved" but denied. *Id.* at 99:24-100:2.

The Court need not resolve whether Mr. Maldonado has presented a close question on Counts Two through Sixteen because, as just noted, he has presented a deficient case on Count One and no record evidence as to what sentence he would have received if he had been convicted only of Count One. In particular, he has presented no evidence that his contemplated sentence on Count One would be "less than the total of the time already served plus the expected duration of the appeal process." *McCabe*, 1991 U.S. App. LEXIS 20448, at *4.

## V.    CONCLUSION

The Court DENIES Carlos Maldonado-Vargas' Motion for Bail Pending Appeal (ECF No. 206).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 30th day of August, 2023