UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:16-cr-661-01-JAW |
| | ) | |
| CARLOS MALDONADO-VARGAS | ) | |

**ORDER ON DEFENDANT'S MOTION RE: AMENDEMENT 821**

The court dismisses without prejudice an inmate's motion to reduce his sentence under Amendment 821 of the United States Sentencing Guidelines, concluding that the defendant is ineligible for a reduction in accordance with U.S.S.G. § 4C1.1 because he caused substantial financial hardship under U.S.S.G. § 4C1.1(6).

## I.   BACKGROUND

### A.   Procedural History

On October 20, 2016, a federal grand jury for the District of Puerto Rico issued a sixteen-count indictment against Carlos Maldonado-Vargas, alleging that he engaged in securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff(a) and bank fraud in violation of 18 U.S.C. § 1344(2). *Indictment* (ECF No. 1). On December 10, 2019, at the end of an eight-day trial, a federal jury convicted Mr. Maldonado on all sixteen counts. *Jury Verdict* (ECF No. 117). On July 15, 2021, the United States Probation Office completed a comprehensive, revised Presentence Investigation Report (PSR).[1] *Presentence Investigation Report* (ECF No. 156) (*PSR*).

---

[1] On July 20, 2021, then Chief Judge Gustavo Gelpí reassigned this case to this Judge. *Order* (ECF No. 160).

On September 12, 2022, the Court held a sentencing hearing at the United States District Court for Puerto Rico, *Sentencing Tr.* at 1-114, and imposed sentence. At the sentencing hearing, the Court imposed a six-level enhancement under U.S.S.G. § 2B1.1(b)(2)(C) "because the offenses resulted in substantial financial hardship to twenty-five or more victims." *Findings Affecting Sentencing* at 1. The Court ordered Mr. Maldonado incarcerated for 135 months on all counts, placed him on supervised release for three years on Count One and for five years on Counts Two through Sixteen, imposed a total special assessment of $1,600, and ordered restitution in the total amount of $1,986,734.26. *J.* (ECF No. 193); *Am. J.* (ECF No. 205). It imposed no fine. *Id.*

On September 21, 2022, Mr. Maldonado appealed the Court's securities fraud conviction and sentence. *Notice of Appeal* (ECF No. 195). On November 14, 2025, the Court of Appeals for the First Circuit affirmed his conviction and sentence.[2] *United States v. Maldonado-Vargas*, 159 F.4th 69, 90 (1st Cir. 2025). In its opinion, the First Circuit rejected Mr. Maldonado's claim that the Court erred in calculating the amount of the loss and determining the number of victims. *Id.* at 85-87.

On December 17, 2025, Mr. Maldonado filed a motion seeking to reduce his sentence. *Mots. Re: Amend. 821* (ECF No. 215) (*Def.'s Mot.*). On December 19, 2025, the Government filed its opposition. *The United States of America's Resp. in Opp'n to Mot. re: Amend. 821* (ECF No. 218) (*Gov't's Opp'n*). On March 10, 2026, the

---

[2]    At the Government's request, the First Circuit vacated Mr. Maldonado's bank fraud convictions but affirmed his securities fraud conviction and sentence, including the Court's restitution order. *Maldonado-Vargas*, 159 F.4th at 90.

Defendant filed a motion for status, seeking an estimated timeframe for the Court's decision.  *Mot.* (ECF No. 220).

### B.    The Crimes

Carlos Maldonado was the principal and owner of Business Planning Resources International Corporation (BPRIC), a corporation organized under the laws of the commonwealth of Puerto Rico and the state of Florida.  *PSR* ¶¶ 6, 13.  As early as 2007, Mr. Maldonado began soliciting and receiving money transfers from investors into the BPRIC bank account, which he promised to invest on their behalf. *PSR* ¶¶ 12-13.  Mr. Maldonado, however, did not invest these funds as promised and instead diverted them for his own personal use, and when his original investors sought returns, he paid them not with returns from investments but with new money from new investors.  *PSR* ¶ 13.  Mr. Maldonado, thus, perpetrated a classic "Ponzi scheme," where funds from new investors are used to pay previous investors in the absence of any legitimate investments. *PSR* ¶¶ 13, 18, 25.

To carry out his Ponzi scheme, Mr. Maldonado used a bank account at Banco Popular de Puerto Rico, of which he was the only authorized user, as the repository of investments BPRIC received.  *PSR* ¶ 23-25.  The investments that Mr. Maldonado and his promoters solicited were paid to the Banco Popular de Puerto Rico bank account through financial institutions whose deposits were insured by the Federal Deposit Insurance Corporation, including Banco Popular de Puerto Rico, First Bank, BBVA, PNC Bank, Scotiabank, Doral Bank USAA Federal Savings Bank, Western Bank, and Banco Santander.  *PSR* ¶ 22.  Between May 7, 2007 and December 23, 2010, ten investors sent funds totaling $561,133.21 through their financial

3

institutions to the BPRIC bank account at Banco Popular de Puerto Rico.  *PSR* ¶ 25. Mr. Maldonado's false and fraudulent representations defrauded Banco Popular de Puerto Rico and the other financial institutions through the loss or transfer of monies under their custody and control.  *PSR* ¶ 26.

Mr. Maldonado used promoters to solicit so-called Investment Contracts for individual investors to invest their money with BPRIC.  *PSR* ¶ 15.  Each promoter received a commission for each BPRIC Investment Contract that the promoter induced.  *Id.*  The Investment Contracts promised investors returns from 15% to 100% and guaranteed the principal amount of the investment if the client did not make the maximum productive development.  *PSR* ¶ 17.  From February 23, 2011 through December 16, 2011, ten investors signed Investment Contracts and invested a total of $482,000 in BPRIC.  *PSR* ¶ 19.

Mr. Maldonado represented that the investment proceeds would be invested in various companies, including Pet Card Systems, Inc., Glorimar Fashions and Tailoring, LLC, Global Business Insurance Agency, Inc., and Datavos Corporation. *PSR* ¶ 16.  Mr. Maldonado failed to disclose that the investment funds would be used to buy and trade stocks and commodities on a Scottrade account, other personal trading accounts, and with Forex Capital Markets, LLC.  *Id.*  Mr. Maldonado also failed to disclose that he would divert these investment funds for his personal use, including for personal travel, rent, entertainment, and automobile loan payments. *PSR* ¶¶ 13, 16.

Upon receiving these investment funds, to promote the investments and give investors a false sense of security that their investments were safe and performing as promised, Mr. Maldonado distributed lulling payments to investors. *PSR* ¶ 18. These payments were not actual returns on investment but instead were diverted from new investors' funds. *Id.*

In 2012 and continuing until 2016, as Mr. Maldonado and BPRIC provided neither the promised returns nor their principal investment to investors, Mr. Maldonado communicated with investors through telephone and mass emails, using his Gmail, Yahoo!, and Hispano Grupo accounts. *PSR* ¶ 20. In these mass and personalized emails, Mr. Maldonado attempted to deter investors from taking legal action and promised to return money through investments in Chinese bonds, a Brazilian gold mine, or recycling company machinery. *PSR* ¶ 21. During the life of this scheme, Mr. Maldonado extracted more than $6,000,000 from investors for fraudulent investments. *PSR* ¶ 35.

The PSR contained a section addressing the devastating impact on the victims of Mr. Maldonado's crime. *PSR* ¶¶ 37-79. All the victims were individuals, few appear to have substantial assets, many lost their life savings, inheritances, and retirement funds. *Id.* The losses ranged from a low of $7,000 taken from the victim's savings account for her children, *id.* ¶ 67, to a high of $1,000,000 from a linked but indirect loss. *Id.* ¶ 62. The Probation Office (PO) estimated that there were "at least 50 [victims] outside the Indictment, plus the 14 included in the Indictment," and

noted that the United States Attorney's Office's Victim and Witness Coordinator interviewed "in excess of sixty victims." *Id.* ¶ 39.

The PO described in detail the severe financial hardship suffered by many of the victims of Mr. Maldonado's crime. *Id.* ¶¶ 41-79. One woman lost all the money she had inherited from her deceased husband, resulting in a "total wipeout" of her assets and forcing her to rely only on social security, ultimately causing her to file for bankruptcy. *Id.* ¶ 42. One man had to delay his retirement from 2020 to 2025 due to Mr. Maldonado's crime. *Id.* ¶ 46. One man has attempted suicide four times and has been diagnosed with major depressive disorder due to losing $50,000 from Mr. Maldonado's crime. *Id.* ¶ 51. One woman lost $100,000 of the money she had received from her husband's life insurance when he committed suicide, causing her to have trouble getting credit, curtailing her lifestyle, and having as little as $200 in her bank account. *Id.* ¶ 57. One man invested his entire retirement savings of $150,000 with Mr. Maldonado and ended up losing the entire sum and having to seek psychiatric treatment due to the loss. *Id.* ¶ 61. At the advice of her father, one victim took $7,000 from her children's savings account to invest with Mr. Maldonado, causing her to lose the entire amount and resulting in tension in her relationship with her father. *Id.* ¶ 67. One man lost $200,000 that he had saved over thirty-three years for his retirement, resulting in his inability to meet his monthly expenses. *Id.* ¶ 72. One woman lost $100,000, which she was using to pay medical bills for a serious illness, and she has had to switch from private to government medical insurance and to rely on church donations to pay her utilities and food. *Id.* ¶ 76. These are only examples.

Mr. Maldonado harmed each of his victims in different, but individually significant ways.  *Id.* ¶¶ 41-79.

## II.    THE PARTIES' POSITIONS

### A.    The Defendant's Motion

Mr. Maldonado explains that Amendment 821 to the Sentencing Guidelines, made retroactive by Congress, creates a new U.S.S.G. § 4C1.1 guideline that allows for a two-point reduction for zero-point offenders—defendants with no criminal history points as calculated in the PSR.  *Def.'s Mot.* at 1.  Mr. Maldonado contends that because he had no prior criminal history points, he is a zero-point offender thus making him eligible for a modification of sentence under 18 U.S.C. § 3582(c)(2), relating to Amendment 821.  *Id.*

### B.    The Government's Opposition

The Government opposes Mr. Maldonado's motion.  *Gov't's Opp'n* at 1.  While it agrees that Mr. Maldonado is a zero-point offender and Amendment 821 is retroactive, the Government explains that Mr. Maldonado "is nonetheless ineligible for an adjustment under U.S.S.G. § 4C1.1(a)(6) because he personally caused substantial financial hardship" to at least the 34 victims detailed in the PSR.  Even if Mr. Maldonado were eligible under U.S.S.G. § 4C1.1, the Government would still oppose a sentence reduction under 18 U.S.C. § 3553(a) factors.

## III.    DISCUSSION

### A.    The Court's Guideline Findings at Sentencing

At sentencing on September 12, 2022, the Court made its guidelines calculations and determined that Mr. Maldonado's total offense level was thirty-three

and fixed his criminal history category as Category I, resulting in a guideline sentence range of 135 to 168 months and, one to three years of supervised release on Count One and two to five years on Counts Two through Sixteen, and a fine from $35,000 to $5,000,000. *Statement of Reasons* at 1 (ECF No. 56). In fixing the guideline range, the Court found that the offenses had resulted in a substantial financial hardship to 25 or more victims, causing six levels to be added to Mr. Maldonado's guideline calculations. *Tr. Sentencing Hr'g* 87:5-7 (ECF No. 204). The Court ordered Mr. Maldonado incarcerated for 135 months on all counts, placed him on supervised release for three years on Count One and for five years on Counts Two through Sixteen, imposed a total special assessment of $1,600, and ordered restitution in the total amount of $1,986,734.26. *J.*; *Am. J.*

### B.    Amendment 821 and *United States v. Dillon*

On April 27, 2023, the United States Sentencing Commission voted to publish Amendment 821 to the Sentencing Guidelines; this new version of the Guidelines took effect on November 1, 2023. *Def.'s Mot.* at 1. Amendment 821 added § 4C1.1, which, in relevant part, allows for a two-level reduction for so-called zero-point Offenders. *See* U.S.S.G. § 4C1.1(a) (2023) (amended 2024). To be eligible for such a reduction, a defendant must "meet [ ] all of the following criteria" listed in U.S.S.G. § 4C1.1(a). *Id.* Mr. Maldonado posits that he qualifies for the two-level reduction under U.S.S.G. § 4C1.1(a), which he argues should be retroactively applied to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2). *Def.'s Mot.* at 1.

In *United States v. Dillon*, 560 U.S. 817 (2010), the United States Supreme Court described the basis for a sentence reduction under 18 U.S.C. § 3582(c)(2) as a

"two-step inquiry." *Id.* . at 826. "At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Id*. at 827. "At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id*.

### C.    U.S.S.G § 4C1.1 is Unavailable

As instructed in *Dillon*, beginning with U.S.S.G. § 1B1.10, the Guidelines provide that "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2)" if the amendment is not "applicable to the defendant" or "does not have the effect of lowering the defendant's applicable guideline range."  U.S.S.G. § 1B1.10(a)(2).

Under § 4C1.1(a)(6), a defendant is entitled to a zero-point offender reduction only if he "did not personally cause substantial financial hardship."  U.S.S.G. § 4C1.1(a)(6). Application Note 3 states that in determining whether a defendant has caused a substantial financial hardship, the sentencing court "shall consider, among other things, the non-exhaustive list of factors provided in application Note 4(F) of the Commentary to § 2B1.1." *Id.* Application Note 3. Application Note 4(F) provides:

> In determining whether the offense resulted in substantial financial hardship to a victim, the court shall consider, among other factors, whether the offense resulted in the victim—
>
> (i) becoming insolvent;

(ii) filing for bankruptcy under the Bankruptcy Code (title 11, United States Code);

(iii) suffering substantial loss of a retirement, education, or other savings or investment fund;

(iv) making substantial changes to his or her employment, such as postponing his or her retirement plans;

(v) making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and

(vi) suffering substantial harm to his or her ability to obtain credit.

U.S.S.G. § 2B1.1 Application Note 4(F).  A comparison between these criteria and the impact of Mr. Maldonado's crime on his victims compels the conclusion that he caused substantial financial hardship to nearly all his victims.  It is also true, however, that "as a matter of law, courts are not strictly limited to considering the enumerated facts under U.S.S.G. § 2B1.1 n.4(F) when determining whether a defendant has caused substantial financial hardship." *United States v. Hanson*, 124 F.4th 1013, 1017 (6th Cir. 2025).

As the Government points out, despite not incurring criminal history points, Mr. Maldonado was nonetheless ineligible for an adjustment under U.S.S.G. § 4C1.1(a)(6) because he personally caused substantial financial hardship. Substantial financial hardship is "more than minimal or trivial" even if not "devastating." *United States v. Minhas*, 850 F.3d 873, 878, (7th Cir. 2017).

Furthermore, courts across the country have applied the § 2B1.1(b)(2)(C) enhancement in situations similar to the facts in this case. *United States v. Day*, 117 F.4th 622, 626 (5th Cir. 2024) (a substantial financial hardship is a loss that

significantly impacts the victim's resources); *United States v. George*, 949 F.3d 1181, 1185 (9th Cir. 2020); *United States v. Castaneda-Pozo*, 877 F.3d 1249, 1252-53 (11th Cir. 2017) (although monetary losses were minimal, the defendant's actions made his victims insecure in life's basic necessities); *United States v. Brandriet*, 840 F.3d 558, 561-62 (8th Cir. 2016); *United States v. Poulson*, 871 F.3d 261, 268 (3d Cir. 2017) (between a minimal and devastating loss, district courts have discretion in determining whether there has been a substantial financial hardship).

In fact, the Court has already determined that Mr. Maldonado has caused substantial financial hardship to his victims.  At the sentencing hearing, the Court imposed a six-level enhancement under U.S.S.G. § 2B1.1(b)(2)(C) because his offenses resulted in "substantial financial hardship to twenty-five or more victims," along with a two-level enhancement under § 2B1.1(b)(10) because he used "sophisticated means" to perpetrate his crimes.  *Id.* ¶¶ 86-87.  As the PSR details, Mr. Maldonado perpetrated a Ponzi scheme for about five years, raising over five million dollars ($5,000,000) in Investment Contracts on behalf of BPRIC, from over one hundred individuals, resulting in losses to investors exceeding three million and seven-hundred thousand dollars ($3,700,000)." *PSR* ¶¶ 6, 12, 13, 14, 39.  Many of Mr. Maldonado' victims were individuals who could ill afford to lose the money they entrusted to him. *Id.* ¶¶ 41-79.  As noted earlier, in Mr. Maldonado's case, the First Circuit rejected his challenge to the Court's guideline finding that his offense resulted in substantial financial hardship to twenty-five or more victims. *Maldonado-Vargas*, 159 F.4th at 85-87.

**D.    Failing to meet step one, the Court does not examine the second *Dillon* step**

As § 4C1.1(a) requires a defendant to meet "all of the following criteria," and he fails to meet one of them, the amendment "does not have the effect of lowering the defendant's applicable guideline range."   U.S.S.G. § 4C1.1(a) (2024) (amending U.S.S.G. § 4C1.1 (2023)); U.S.S.G. § 1B1.10(a)(2).  As Mr. Maldonado cannot meet the first step of the inquiry under *Dillon*, it is irrelevant whether he can meet the second. *Dillon*, 560 U.S. at 827 ("Because reference to § 3553(a) is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into plenary resentencing proceedings").

## IV.    CONCLUSION

The Court DISMISSES without prejudice Carlos Maldonado-Vargas' Motions Re: Amendment 821 (ECF No. 215).  The Court DISMISSES as moot Carlos Maldonado-Vargas' Motion for Status of Motion (ECF No. 220).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 16th day of March, 2026